Roslyn O. BEAUFORD, Joseph C. Palmento, Maria Valle, Joseph DeCesare, Jr., and Elsie DeCesare, Appellants,

v.

Harry B. HELMSLEY, Supervisory Management Corp., Avenue of America Realty Corp., Benenson Capital Co., Sanford G. Bluestein, Felice Earley, Estate Associates, Joan Konner, Peter L. Malkin, John J. Reynolds, Inc., Saul S. Silverman, William C. Warren, William C. Breed III, Ralph W. Felsten, Lillian M. Gelfman, Robert W. Gelfman, Donald L. Jonas, Jeffrey D. Klein, Norman R. Klein, Alvin S. Lane, Fred Linden, Gertrude G. Malkin, Peter L. Malkin, Claire W. Morse, Lester S. Morse, Jr., Richard P. Morse, Ivan Shapiro, Alvin Silverman, Harold L. Strudler, Brown, Harris, Stevens, Inc., Marcel P. Aillery, J.G. White Engineering Corp., Appellees.

No. 40, Docket 87–7216.

United States Court of Appeals, Second Circuit.

Argued Sept. 23, 1987.

Decided March 31, 1988.

Rehearing In Banc Granted April 1, 1988.

---

Edward S. Kanbar, New York City, for appellants.

Steven M. Hayes (Parcher Arisohn & Hayes, P.C., Brian D. Caplan, of counsel), for appellees.

Before LUMBARD, OAKES, and KEARSE, Circuit Judges.

OAKES, Circuit Judge:

Despite the Supreme Court's decision in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), courts generally, and courts in the Second Circuit in particular, remain confused (and certainly confusing) in their construction of the statutes governing so-called civil RICO, the provision of a private civil remedy of treble damages for injury "by reason of a violation of" the substantive provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), Pub.L. No. 91–452, Title IX, 84 Stat. 941, codified as amended, 18 U.S.C. §§ 1961–68 (1982 & Supp. IV 1986). *See* 18 U.S.C. § 1964(c). Here, the United States District Court for the Southern District of New York, Robert W. Sweet, Judge, 650 F.Supp. 548, dismissed an amended complaint alleging RICO and state law violations in connection with the conversion of an apartment complex into condominiums, and refused to allow the plaintiffs to file a second amended complaint. It is important here to recite the allegations of both the amended and proposed second amended complaint, because both must be construed in the light most favorable to plaintiffs. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957).

*The Amended Complaint* (dismissed by the district court).

The plaintiffs consist of five tenants, one who bought and four who did not buy their respective apartments in Parkchester, a Bronx residential complex. Each was given the opportunity to purchase after Parkchester Apartments Co. filed an offering plan for the conversion under New York's General Business Law Article 23–A (the Martin Act) (McKinney 1984 & Supp. 1988), particularly N.Y.Gen.Bus.Law § 352–e. Parkchester is a complex of fifty-one apartment buildings in four separate quadrants containing a total of 12,271 apartments. Defendants are the sponsor, Parkchester Apartments Co. (a New York real estate partnership), the individual partners (both individuals and entities), the sponsor's sales agent (Brown, Harris, Stevens, Inc.), and two engineering firms which, and an individual engineer who, supplied engineering reports and studies as part of the conversion.

The North Quadrant at Parkchester was converted to condominium ownership in 1973, though the sponsor retains and continues to sell apartments in it. The sponsor filed an offering plan for the conversion of the East, West, and South Quadrants, consisting of 8,286 apartments in June 1984. It is in connection with this offering that allegations of fraud are made on behalf of various classes of tenants, insider purchasers, and outside purchasers. While repetition of all the allegations is not necessary, a somewhat detailed sampling is appropriate.

Count One alleges a material misrepresentation, in that the sponsor concealed that some buildings had serious structural defects and that their plumbing and electrical systems needed replacement.

Count Two alleges that the engineering defendants made willful misstatements by omitting information as to the plumbing and electrical systems and the structural defects from their reports.

Count Eleven, the RICO count, alleges not only the false and misleading offering plans, but also the denial of tenants' claims of damage caused by inadequate plumbing and electrical service or structural defects, false statements made in legal actions, and harassment of tenants to effect their eviction, all achieved by use of the mails and telephone. As amended, the complaint also alleges misrepresentations as to the identity of the sponsor and claims (A) that the cost of plumbing repairs was absorbed by management, thereby appearing to lower the maintenance cost of each apartment and creating an artificial condition of lower maintenance costs and higher sales prices, (B) that the insulation of the plumbing pipes was asbestos, and (C) that the plumbing leaks caused electrical short circuits. There are said to be two RICO enterprises —Parkchester Apartments Co. and the defendants as a group.

*The Proposed Second Amended Complaint* (motion for leave to file denied for "failure ... to allege properly an injury directly caused by the so called RICO allegations under *Sedima, S.P.R.L. v. Imrex Co.,* [473] U.S. [479] 105 S.Ct. [3275] 3276 [87 L.Ed.2d 346] (1985)").

The proposed second amended complaint, after incorporating the original and amended complaints by reference, alleges that Parkchester Apartments Co. is the "enterprise" for RICO purposes and purports to amplify the "racketeering activity" and the "pattern of such racketeering activity" by reference to an "overview" of racketeering acts. In addition to the acts previously alleged, the revised complaint lists the following illegal acts: (A) denial of liability for the maintenance of Parkchester's central malls; (B) improper curtailing of land-scape maintenance; (C) making false statements concerning liability for water damage; (D) manipulating costs among different quadrants within the complex; (E) making illegal financial statements; (F) withdrawing hot water, electrical, and elevator services; (G) failing to disclose that the cost of plumbing and electrical repairs are borne by the enterprise; (H) reducing painting services; (I) failing to disclose the purchase of supplies through a related company; (J) selective enforcement of rules and regulations, leading to discriminatory action against certain tenants; (K) illegal destruction of documents; and (L) tax evasion by defendant Helmsley in allocating personal expenses as business expenses. The complaint then alleges specifics as to each claim, although in respect to (K) and (L) above they are "on information and belief."

## DISCUSSION

*Sedima* held that there is no requirement that a private civil RICO action proceed only against a defendant who already has been convicted of the predicate act or of a RICO violation. 473 U.S. at 493, 105 S.Ct. at 3284. Nor is there any requirement that the plaintiff establish a "racketeering injury," as opposed to an injury resulting from a predicate act. 473 U.S. at 497, 105 S.Ct. at 3286. In so holding, the Court did say that:

A violation of § 1962(c) ... requires (1) conduct (2) of an enterprise (3) through a pattern[14] (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim. Conducting an enterprise that affects interstate commerce is obviously not in itself a violation of § 1962, nor is mere commission of the predicate offenses. In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.

473 U.S. at 496, 105 S.Ct. at 3285–86.

Footnote 14, attached to element (3) above, pointed out that "the definition of a 'pattern of racketeering activity' differs

from the other provisions in § 1961 in that it states that a pattern 'requires at least two acts of racketeering activity,' § 1961(5) (emphasis added), not that it 'means' two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a 'pattern.' " 473 U.S. at 496 n. 14, 105 S.Ct. at 3285. The footnote goes on to refer to legislative history and concludes by stating:

> Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. Cf. *Iannelli v. United States*, 420 U.S. 770, 789, 95 S.Ct. 1284, 1295, 43 L.Ed.2d 616 (1975).

*Id.*

Since *Sedima* a number, but by no means all, of the district courts and courts of appeal have been guided by the text just quoted and footnote 14, and by Justice Powell's dissent, 473 U.S. at 523, 105 S.Ct. at 3304, to impose one limitation or another upon civil RICO. These courts have focused on the statement in the Senate Report highlighted in footnote 14 (as well as in the Powell dissent) which says: " 'The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern.' S.Rep. No. 91–617, p. 158 (1969) (emphasis added)." 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. Footnote 14 added emphasis to the words "continuity plus relationship," while Justice Powell's dissent emphasized the word "and" in the second sentence quoted and the word "plus" in the third sentence. *See* 473 U.S. at 527–28, 105 S.Ct. at 3289–90. Several commentators have noted the restrictive interpretations of "pattern of racketeering activity" made by courts that have considered the problem. Black, *Racketeer Influenced and Corrupt Organizations (RICO)—Securities and Commercial Fraud as Racketeering Crime After Sedima: What Is a "Pattern of Racketeering Activity"?*, 6 Pace L.Rev. 635 (1986); Comment, *Civil RICO: Restrictive Interpretations of a "Pattern" in Light of Sedima, S.P.R.L. v. Imrex Co., Inc.*, 64 U.Det.L. Rev. 201 (1986); Note, *Reconsideration of Pattern in Civil RICO Offenses*, 62 Notre Dame L.Rev. 83 (1986); Note, *RICO: Limiting Suits by Altering the Pattern*, 28 Wm. & Mary L.Rev. 177 (1986).

Much of the discussion in the courts and commentaries revolves around whether a pattern can exist within a single criminal episode and whether a pattern requires the presence of a common criminal scheme. As then District Judge Newman observed in *United States v. Moeller*, 402 F.Supp. 49, 57 (D.Conn.1975), it is difficult to fit a single criminal episode within the concept of pattern because at first glance it lacks "continuity." He said that pattern "implies acts occurring in *different criminal episodes*, episodes that are at least somewhat separated in time and place yet still sufficiently related by purpose to demonstrate a continuity of activity." *Id.* at 57. However, this reasoning has been questioned because section 1961(5) requires two acts of racketeering activity, not a scheme. In addition, the legislative history does not mention "episodes" or "transactions," even while noting the requirement of "continuity plus relationship" which combine to create a pattern. *See* S.Rep. No. 91–617 at 158. *See* Note, 62 Notre Dame L.Rev. at 86 n. 27.

Even within a single episode, of course, the nature of the enterprise and the character of the offense may show a threat of continuity. *See United States v. Watchmaker*, 761 F.2d 1459, 1475 (11th Cir.1985), 'cert. denied, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 917 (1986); *United States v. Brooklier*, 685 F.2d 1208, 1217 (9th Cir. 1982), cert. denied, 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983). Most courts

before *Sedima* did not follow *Moeller*'s dicta, but instead adopted the position that acts occurring within a single criminal episode could constitute a pattern, *e.g., Watchmaker*, 761 F.2d 1459; *United States v. Starnes*, 644 F.2d 673, 677–78 (7th Cir.), *cert. denied*, 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981). In the leading Second Circuit case, *United States v. Weisman*, 624 F.2d 1118 (2d Cir.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980), this court held that bankruptcy fraud and fraud in the sale of securities constituted a pattern of racketeering activity where there was no common scheme. In effect, the court held that a pattern exists whenever the acts are part of conducting the enterprise's affairs. *Id.* at 1122.

After *Sedima* was decided, the Supreme Court's commentary on the pattern requirement was interpreted in several different ways. Some courts have considered it dictum; others have taken definitive guidance from it. For example, in *Illinois Department of Revenue v. Phillips*, 771 F.2d 312 (7th Cir.1985), the Seventh Circuit held that a retailer's mailing of fraudulent tax returns to the state over a nine-month period constituted a pattern of racketeering activity. On the other hand, in *Northern Trust Bank/O'Hare v. Inryco, Inc.*, 615 F.Supp. 828, 833 (N.D.Ill.1985), the district court noted that *Sedima* "creates a whole new ballgame," and that pre-*Sedima* decisions interpreting the pattern requirement would have to be reconsidered. The court held that two separate mailings made in furtherance of a fraudulent kickback scheme were insufficient to establish a pattern of racketeering activity, in the absence of evidence from which any continuous criminal activity could be inferred. *Id.* at 831–33. Indeed, some courts have expanded on the *Inryco* concept that a single scheme cannot constitute a pattern. *E.g., Soper v. Simmons Int'l, Ltd.*, 632 F.Supp. 244, 253–54 (S.D.N.Y.1986) (twenty violations of RICO predicate acts alleged involving at least three different parties insufficient; pattern requires more than numerous ministerial acts in furtherance of single scheme). In *Superior Oil Co. v. Fulmer*, 785 F.2d 252

(8th Cir.1986), the Eighth Circuit reversed a verdict for the plaintiff in a RICO suit where there was but a single wrongful conversion suit, although several fraudulent acts were alleged. The court held that the plaintiff "failed to prove the 'continuity' sufficient to form a 'pattern of racketeering activity'" because the actions comprised one continuing scheme to convert. 785 F.2d at 257. Several other circuits, however, have refused to go so far as to rule that a single criminal scheme cannot as a matter of law constitute a pattern of racketeering activity. *E.g., Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 193 (9th Cir.1987); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Touche Ross & Co.*, 782 F.2d 966, 971 (11th Cir.1986); *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1355 (5th Cir.1985).

On the other hand, in *Alexander Grant & Co. v. Tiffany Industries*, 770 F.2d 717 (8th Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 799, 88 L.Ed.2d 776 (1986), the Eighth Circuit had held that an accounting firm stated a claim for relief against its client where the scheme was simply to obtain a favorable audit for one fiscal year. Footnote 1 to the opinion, while holding that the sufficiency of the pleading as to substantive violation under section 1962(c) had not had been questioned, also went on to say that because the complaint alleged some twenty-six acts of mail fraud and four acts of wire fraud, "[t]he number and nature of acts, together with allegations demonstrating their similar purposes, results, participants, victims, and methods of commission, bespeak a sufficient 'continuity plus relationship' to satisfy the Supreme Court's concerns in *Sedima* that RICO not be extended to reach sporadic activity." *Id.* at 718 n. 1. Thus, with a brush, the common scheme definition of pattern was ignored.

In the face of conflicting decisions from other circuits and considerable conflict among the district courts in this circuit, *compare Bankers Trust Co. v. Feldesman*, 648 F.Supp. 17, 23–27 (S.D.N.Y.1986), *as amended* (1987), *with Baum v. Phillips, Appel & Walden, Inc.*, 648 F.Supp. 1518,

1533–35 (S.D.N.Y.1986), the Second Circuit has taken an entirely different path. Unfortunately, our road thus far is at least as confusing as the divergent paths taken by other federal courts. In *United States v. Ianniello*, 808 F.2d 184, 190 (2d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 3229, 97 L.Ed.2d 736 (1987), a panel held that it was bound by the leading pre-*Sedima* case, *United States v. Weisman*, which held that two predicate acts can suffice to satisfy the pattern requirement of RICO, *Sedima* footnote 14 notwithstanding. That footnote, said the *Ianniello* opinion, indicated that "a combination of relationship and continuity between separate acts is required to establish a pattern." 808 F.2d at 190. The *Ianniello* court went on to say,

> [b]ecause the *Sedima* footnote does not rise to the level of a holding, it is not controlling. It would be particularly inappropriate in this case ... to reconsider *Weisman*, since that case carefully and thoughtfully addressed the concerns later considered by the Supreme Court in the *Sedima* footnote. *See Weisman*, 624 F.2d at 1121–23. There is no indication in that footnote that the Supreme Court had considered and rejected the *Weisman* analysis.

*Id.* Under *Weisman*, then, "relatedness is supplied by the concept of 'enterprise' expressed in section 1962(c) and the ten year requirement of section 1961(5)." *Id.* (footnote omitted). The link between the acts was said to be "supplied by the fact that 'the predicate acts constituting a "pattern of racketeering activity" must all be done in the conduct of the affairs of an "enterprise." ' " *Id.* (quoting *Weisman*, 624 F.2d at 1122).

The *Ianniello* panel then rejected the proposition that crimes aimed at a discrete goal similar in time and in instance must be distinguished from those committed to further continuing criminal activity, saying "[a]s discussed above, we believe that the inquiry as to relatedness and continuity is best addressed in the context of the concept of 'enterprise' expressed in section 1962(c), and to a lesser extent, the ten year requirement of section 1961(5)." *Id.* at 191. *Ianniello* then held that "an enter-

prise with 'a single purpose,' *here fraud continuing indefinitely*, can provide the basis for a section 1962(c) violation. The common purpose in this case was to skim profits and *had no obvious terminating goal or date*, clearly establishing the enterprise requirement." *Id.* at 191–92 (emphasis added). The court rejected the Eighth Circuit's holding in *Fulmer* and sought to draw support from *United States v. Teitler*, 802 F.2d 606, 611–12 (2d Cir.1986) (upholding a charge regarding two predicate acts involving two different insurers and hence arguably two different schemes). *Id.* at 192.

If all we had then were *Ianniello*, this case would be easy; surely here an enterprise is alleged—an enterprise which meets the requirements of 18 U.S.C. § 1961(4), defining an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The allegations also satisfy the standards of *United States v. Turkette*, 452 U.S. 576, 585–87, 101 S.Ct. 2524, 2529–31, 69 L.Ed.2d 246 (1981), which held that the definition of enterprise encompasses both legitimate and illegitimate endeavors, that an enterprise need not be involved in racketeering, and that there need be no relationship between the enterprise and the racketeering activity. But other decisions in this circuit have greatly clouded the question whether *Ianniello*'s focus on enterprise is all our analysis need entail.

The first of these was *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46 (2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). *Beck* held that it was "clear after *Ianniello* that the District Court erred in interpreting 'pattern of racketeering activity' to require multiple episodes. *Ianniello* confirms that two related predicate acts will suffice to establish a pattern under 18 U.S.C. § 1961(5)." 820 F.2d at 51. However, *Beck* then pointed out that "*Ianniello* emphasizes that a plaintiff must prove the existence of a *continuing* enterprise under 18 U.S.C. § 1962(c)." *Id.* *Beck* went on to say that

"[a]s *Ianniello* recognized, whether one looks for the requisite continuity and relatedness by examining the pattern or the enterprise is really a matter of form, not substance." *Id.* Since in *Beck* the enterprise alleged by plaintiffs had "but one straightforward, short-lived goal—the sale of the U.S. collateral at a reduced price," and the alleged enterprise had ceased functioning at the conclusion of the sale, such association was not sufficiently continuing to constitute an enterprise. *Id.* Here we note that a judge who was on the *Ianniello* panel later suggested that *Beck* "rides right over" *Ianniello* by bringing "the multiple-episode concept back to life by engrafting it onto the 'enterprise' requirement." *Furman v. Cirrito*, 828 F.2d 898, 908 (2d Cir.1987) (Pratt, J., dissenting).

In *Furman*, the panel upheld dismissal of a RICO claim after pointing out that *Sedima*'s note 14 "held that in order for there to be a pattern of racketeering activity, there must be continuing activity or continuity in the conduct at issue." 828 F.2d at 902. The court noted that in *Weisman* and *Ianniello*, "this Court faced the question whether RICO also requires continuity and relatedness in the alleged 'enterprise' ... answer[ing] this question in the affirmative." *Id.* Because in *Furman* the partnership which was the alleged enterprise was dissolved by an alleged fraudulent sale, there was insufficient evidence of an ongoing organization, formal or informal, or any evidence that the various associates functioned as a continuing unit within the meaning of *Turkette* so as to constitute an enterprise. *Id.* at 903. Judge Pratt's dissent treated the majority opinion in *Furman* a bit more kindly than it did the opinion in *Beck*, saying only that "the majority here motors past *Ianniello* with hardly a glance in the rear view mirror ...," *id.* at 908, as opposed to the hit and run perpetrated by *Beck*. The dissent is also noteworthy for its demonstration that since *Ianniello* the district judges in the circuit are in even greater disagreement than before. *Id.* at 908–09.

As if this were not enough, even more recently another panel decided *Albany Insurance Co. v. Esses*, 831 F.2d 41 (2d Cir.

1987). Referring to *Sedima*, *Ianniello*, and *Beck*, the court held that the amended complaint was dismissable because the purpose of the enterprise (inducing the insurer of its goods to pay a false insurance claim) had an "obvious terminating goal or date" within *Ianniello*, 808 F.2d at 192. 831 F.2d at 44. Since there was no threat of ongoing criminal activity beyond this terminating goal, the enterprise was not sufficiently "continuing" to constitute a RICO enterprise. *Id.* (citing *Beck*, 820 F.2d at 51). The plaintiff sought leave to replead, alleging two additional schemes so as to "have satisfied the 'pattern' requirement," *id.*, the first, an earlier scheme to swindle its original insurer and the second, an act of arson. The *Albany* panel affirmed the district court's denial of the request, saying:

> Both allegations would do nothing to establish the "continuity plus" that *Ianniello* requires to establish a "pattern." Even if [the earlier insurer] had been the initial target of the fraud, [the defendants'] alleged enterprise still had only one target—the insurer of its shoes—and one finite goal—inducing that insurer to pay a fraudulent insurance claim. Arson, even if proven, would merely have supplied evidence of an additional predicate act, not evidence of a threat of continuing criminal activity.

*Id.*

Just the other day, a panel followed *Albany* and *Beck* in holding that an amended complaint was "properly dismissable for plaintiffs' failure to establish 'continuity' as that factor relates to the RICO enterprise." *Creative Bath Prods., Inc. v. Connecticut Gen. Life Ins. Co.*, 837 F.2d 561, 564 (2d Cir.1988). In *Creative Bath* the plaintiff claimed that the defendant had made three fraudulent representations in the course of selling to two affiliated companies four life insurance policies on the lives of their two partners, using the mails and wires to carry out the fraud. The panel noted that these allegations were sufficient to make out a RICO "pattern" under *Ianniello*, but held that the alleged scheme, carried out "in pursuit of a single short-lived goal," did not "establish 'conti-

nuity' as that factor relates to the RICO enterprise." *Id.* The panel bolstered its result by noting that the plaintiff's claim was not meaningfully distinguishable from the claims in *Beck* and *Albany*, and affirmed the district court's dismissal. *Id.* at 564.

Essentially, then, the court has come some distance from *Ianniello.* Although, except for *Albany,* we speak in terms of "enterprise" rather than "pattern," we nonetheless require continuity in any event, and find insufficient evidence of continuity in a single criminal episode regardless of how many fraudulent acts it entails. In other words, a single criminal episode or scheme does not charge a claim under RICO because it lacks sufficient continuity to constitute an enterprise, even if its fraudulent acts constitute a pattern.

█ Where are we left? The instant case involves a single alleged scheme to defraud buyers, tenants, and the authorities overseeing the laws pertaining to such. Nevertheless, considerable continuing activity is alleged. The alleged enterprise, the partnership, is indeed ongoing and still in the process of selling or seeking to sell condominiums pursuant to its allegedly fraudulent offering plan. Moreover, the allegedly fraudulent failure to disclose the status of the plumbing and electrical systems along with its alleged cover-up is claimed to be ongoing. If *Ianniello* were followed to the letter, arguably there is both pattern and enterprise. If *Beck* or *Furman* is followed, there may or may not be sufficient continuity since the purpose, or the principal purpose, of the alleged enterprise is to sell a finite number of condominiums to tenants and outside purchasers. But if the combination of *Furman* and *Albany* have turned footnote 14 of *Sedima* into a holding—thereby implicitly overruling *Ianniello* 's reference to dictum—so that a pattern of racketeering activity must be established, then we are confronted with the very same question the other circuits have faced with opposing viewpoints. Since *Creative Bath* indicates this is not the case, we must decide whether a discrete, even if widespread, and a

continuing even if finite, scheme is sufficient to permit a plaintiff to take advantage of RICO. We hold that it is not. The additional acts alleged in the proposed second amended complaint do not take away from the discrete, finite nature of the scheme alleged. Accordingly, we affirm, even though we agree that this case should be reheard en banc to clarify Second Circuit law.

Judgment affirmed.