## In re CRAZY EDDIE SECURITIES LITIGATION.

### No. 87 C 33.

United States District Court, E.D. New York.

June 16, 1989.

Rabin & Sirota (Howard B. Sirota, of counsel), New York City, for plaintiff Kaun.

Abbey & Ellis (Arthur Abbey, of counsel), New York City, for plaintiff Papastamatakis.

Milberg, Weiss, Bershad, Specthrie & Lerach (Michael C. Spencer, of counsel), New York City, for plaintiff Hoffman.

Akin, Gump, Strauss, Hauer & Feld (David A. Donohoe, Clinton R. Batterton, and Anthony T. Pierce, of counsel), Washington, D.C., and Pryor, Cashman, Sherman & Flynn (James A. Janowitz, of counsel), New York City, for defendant Crazy Eddie, Inc.

Kronish Lieb Wiener & Hellman (Justin N. Feldman, of counsel), New York City, for defendant Eddie Antar.

Friedman & Kaplan (Bruce S. Kaplan, of counsel), New York City, for defendants Kairey, Pasquariello, Zimel, Eddy Antar, Sam E. Antar, Solomon E. Antar, and Levy.

Sherman & Sterling (Kenneth M. Kramer, of counsel), New York City, and Davis, Markel & Edwards (Thomas Sweeney, of counsel), New York City, for defendant Peat Marwick Main & Co.

NICKERSON, District Judge.

By Memorandum and Order dated December 30, 1988 (the December opinion), *Bernstein v. Crazy Eddie, Inc.,* 702 F.Supp. 962 (E.D.N.Y.1988), familiarity with which is assumed, the court granted in part motions by various defendants to dismiss the complaint. Plaintiffs and cross-claimant Crazy Eddie, Inc. (Crazy Eddie), move to reargue that part of the order dismissing with prejudice their respective claims under § 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* (1982 & Supp. IV 1986). Defendant Peat Marwick Main & Co. (Peat Marwick) moves to reargue that part of the order denying its motion to dismiss the claims brought under § 12(2) of the Securities Act of 1933 (the Securities Act), 15 U.S.C. § 77a *et seq.* (1982 & Supp. IV 1986). Defendant Crazy Eddie moves to enforce a Memorandum of Understanding purporting to settle its claims with some plaintiffs. Peat Marwick and eight other defendants, Eddie Antar, Isaac Kairey, Steven Pasquariello, Carl G. Zimel, Eddy Antar, Sam E. Antar, Solomon E. Antar, and Edmond Levy (the individual defendants), renew their motion to dismiss Crazy Eddie's cross-claims.

## I. *The RICO Claims*

In dismissing with prejudice plaintiffs' and Crazy Eddie's claims under § 1962(c) and (d) of RICO, the court relied on the Second Circuit's opinion in *Beauford v. Helmsley,* 843 F.2d 103 (2d Cir.1988). This court held that the alleged "discrete" and "finite" scheme, like the scheme alleged in *Beauford,* lacked sufficient continuity to state a claim under RICO. (The court also dismissed on other grounds claims under § 1962(a) and (b). The parties do not seek to revive those claims on this motion.)

In an *en banc* opinion the Court of Appeals later vacated the decision of the *Beauford* panel. 865 F.2d 1386 (2d Cir. 1989). Plaintiffs and Crazy Eddie now seek to reinstate or replead their RICO claims.

A. *The Complaint Under the New Second Circuit Standard*

Together with its companion opinion, *United States v. Indelicato,* 865 F.2d 1370 (2d Cir.1989) (*en banc*), the *en banc* decision in the *Beauford* case undermines the rationale stated in the December opinion for dismissing the § 1962(c) and (d) claims. In those cases, the Second Circuit established that "a RICO pattern may be adequately alleged without an allegation that the scheme pursuant to which the racketeering acts were performed is an ongoing scheme having no demonstrable ending point," so long as the acts of racketeering activity are "neither isolated nor sporadic." *Beauford, supra,* 865 F.2d at 1391; *see also Indelicato, supra,* 865 F.2d at 1383 (no need to allege "a scheme with no apparent termination date. . . . We doubt that Congress meant to exclude from the reach of RICO multiple acts of racketeering simply because they achieve their objective quickly or because they further but a single scheme."). This new reasoning by the Court of Appeals requires this court to reconsider its earlier decision.

■ Assuming for the moment that the securities fraud, mail fraud, and wire fraud alleged as predicate acts are well-pleaded, the court holds that they are sufficiently related and continuous to satisfy the new standard. The acts allegedly constituted part of an on-going scheme to defraud shareholders by fostering the false impression that Crazy Eddie was a rapidly growing company. The scheme was allegedly carried out over a period of years and presumably would have continued, albeit not indefinitely, if new management had not ousted the individual defendants. The racketeering acts were "neither isolated nor sporadic," and therefore constitute a "pattern of racketeering activity."

■ Eddie Antar argues that, because the ouster of the individual defendants eliminated any "threat of continuity" of racketeering activity, this case is distinguishable from the *Beauford* case, in which the court listed allegations suggesting such a threat of mail fraud. *Beauford, supra,* 865 F.2d at 1392.

It is true that the individual defendants can no longer pursue their fraudulent

scheme. The court does not believe, however, that the language cited in *Beauford* precludes the finding of a pattern of racketeering activity merely because new management foiled those defendants' pursuit of their plan. If, for example, every member of an organized crime family were indicted, arrested, and held without bail, it would be fatuous to conclude that none of them could be prosecuted under RICO because they could no longer commit further misdeeds.

In the December opinion this court expressed concern that broad application of the civil RICO statute would ensnare many who have no connection and little if any similarity to its chief target, organized crime. *Bernstein, supra,* 702 F.Supp. at 981–82. The Second Circuit has concluded, however, that Congress intended this result: "Congress made the legislative judgment ... that in order to reach members of organized crime, it was worth reaching other offenders as well." *Beauford, supra,* 865 F.2d at 1393.

Since this court relied on precedents now effectively overruled, it vacates the December opinion to the extent that it dismisses with prejudice plaintiffs' and Crazy Eddie's § 1962(c) and (d) claims.

The individual defendants argue that those claims are nonetheless inadequate on other grounds.

## B. *Crazy Eddie's Cross–Claim Under RICO*

The individual defendants urge that Crazy Eddie may not cross-claim under RICO because it cannot show the requisite "injury" stemming from the individual defendants' alleged scheme to inflate the price of Crazy Eddie securities.

Crazy Eddie says that the scheme caused harm of two kinds. First, the scheme harmed Crazy Eddie by eventually causing a dramatic drop in the price of its stock and damage to its credit rating, going-concern value, and business reputation. Second, the scheme harmed Crazy Eddie derivatively by perpetrating a fraud on plaintiffs for which Crazy Eddie may ultimately be liable.

To make out a civil RICO claim, a plaintiff must show that he has been "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). If a plaintiff can prove each element of a § 1962 violation, "the compensable injury necessarily is *the harm caused by predicate acts* sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (emphasis added).

The cross-complaint characterizes the individual defendants' acts as a "scheme to defraud shareholders and others relying on Crazy Eddie's public financial information." It alleges that in furtherance of this scheme the individual defendants "used the U.S. mails to deliver materially false and misleading information to the public," "used wire and interstate telephone communications," and "devised and participated in a fraud in the sales of securities."

The alleged predicate acts constituting the "pattern of racketeering activity" under RICO are thus not the doctoring of the books and thefts from inventory alleged in the complaint and admitted in Crazy Eddie's answer but the securities frauds and the use of the mails and wires to perpetrate frauds. The only "injury" for which Crazy Eddie could conceivably claim threefold damages under § 1964(c) is therefore not the amount it lost from the individual defendants' alleged thievery but whatever further injury is attributable to the revelation of the alleged frauds as reflected in Crazy Eddie's eventual loss of its business reputation, going concern value, and credit rating.

It is hard to see how Crazy Eddie could prove that it lost more from the public knowledge that it was run by alleged defrauders as well as alleged thieves than it would have lost had they been merely thieves. But because the case is still at the pleading stage the court will assume for the sake of argument that Crazy Eddie could make that showing and will address the question of whether the putative injury

was "by reason of," that is, "caused" by, the predicate acts.

■ No doubt in a literal sense the web of causation of any injury is seamless and infinite. *E.g., Bloom v. Bradford,* 480 F.Supp. 139, 148 (E.D.N.Y.1979). But while RICO imposes liability for "indirect" as well as "direct" injury, "both direct and indirect injuries must be proximately caused" by the RICO violation. *Sperber v. Boesky,* 849 F.2d 60, 63, 64 (2d Cir.1988). That is but a shorthand way of saying that some practical boundary must be set to liability for indirect consequences of the RICO predicate acts, and set on the basis of the objectives of the statute, the foreseeable consequences of the acts, and their relationship to the loss claimed. *See id.* at 63; *Bloom, supra,* 480 F.Supp. at 148.

■ In this case several factors suggest that Crazy Eddie's damages attributable to the predicate acts were not "proximately caused" by them. The cross-complaint states that they were directed not at Crazy Eddie but at the shareholders and the investing public. *Cf. Burdick v. American Express Co.,* 865 F.2d 527, 529 (2d Cir. 1989). Those acts had no immediate depressing effect on Crazy Eddie's stock price, credit rating, and the like. On the contrary, the implementation of the scheme to disseminate false information about Crazy Eddie's financial health allegedly inflated the price of the stock. The subsequent crash in the price of Crazy Eddie securities and decline in the company's creditworthiness resulted from public revelation of the individual defendants' frauds. *See Sperber v. Boesky,* 672 F.Supp. 754, 757–58 (S.D.N.Y.1987), *aff'd,* 849 F.2d 60 (2d Cir.1988).

It seems highly unlikely that the Court of Appeals for the Second Circuit, however expansively it views the scope of RICO's "pattern of racketeering activity," will go so far in a new *en banc* decision as to abandon the sensible and pragmatic approach of, for example, *Sperber, supra,* 849 F.2d 60, and to hold that RICO grants threefold damages on a claim as remote from the predicate acts as that asserted by Crazy Eddie.

Crazy Eddie may, of course, eventually have to compensate the shareholders for the individual defendants' alleged frauds. But if plaintiffs recover treble damages from Crazy Eddie, and it in turn recovers thrice that from the individual defendants, the wrongdoers will end up paying nine times the damages attributable to their acts. If Congress had intended such an extraordinary recovery on a simple claim for contribution or indemnification, it would undoubtedly have said so in the statute. Crazy Eddie may have a claim for indemnification. But it may not recover under RICO.

The court therefore dismisses with prejudice Crazy Eddie's claims under § 1962(c) and (d).

## C. *Civil Conspiracy to Violate RICO*

The individual defendants argue that plaintiffs have no civil RICO claim under § 1962(d) because they can allege no injury from mere agreement to violate a substantive subsection of § 1962.

■ Subsection 1962(d) makes it unlawful to conspire to violate § 1962(a), (b), or (c). The statute does not require proof of overt acts in furtherance of the conspiracy. *E.g., United States v. Barton,* 647 F.2d 224, 237 (2d Cir.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981). However, the injury requirement of § 1964(c) applies to claims brought under § 1962(d) as well as to those brought under the substantive subsections.

On its face § 1962(d) requires plaintiffs to prove merely defendants' agreement to violate a substantive subsection of § 1962. This court cannot envision how plaintiffs could show immediate injury from the mere making of an agreement. But Congress would hardly have provided in § 1964(c) for a civil claim for injury to business or property "by reason of" a conspiracy to violate § 1962(c) unless Congress meant that claim to be meaningful.

■ It is therefore reasonable to read § 1964(c) to mean that if a defendant has violated § 1962(d) by making an agreement to violate § 1962(c), plaintiff may have damages for the injury to business or prop-

erty resulting from the defendant's commission in furtherance of the agreement of a predicate act. The agreement, while not the immediate cause, would be the initiating cause of the injury. By hypothesis the defendant would have anticipated, indeed intended, the commission of the predicate act.

This court therefore holds that such an injury would be proximately caused by the violation of § 1962(d).

In any event, other courts have entertained civil claims under § 1962(d), albeit without analysis in terms of causation. *See, e.g., Lewis v. Sporck,* 612 F.Supp. 1316, 1325 (N.D.Cal.1985); *Joseph v. Algemene Bank Nederland, N.V.,* 592 F.Supp. 141, 147–48 (W.D.Pa.1984).

Plaintiffs may pursue their § 1962(d) claim.

D. *Plaintiffs' Claims Against Edmond Levy, Carl Zimel, and Steve Pasquariello*

■ Plaintiffs seek to reinstate their RICO claims against, among others, Edmond Levy, Carl Zimel, and Steve Pasquariello. The individual defendants point out that the December opinion dismissed all claims against Edmond Levy because the complaint alleged nothing against him. The RICO count did not name Carl Zimel and Steve Pasquariello. Plaintiffs may not "reinstate" claims they never brought.

E. *The Particularity Requirement of Rule 9(b)*

The individual defendants argue that plaintiffs' RICO claims should be dismissed for failure to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

The complaint alleges that Eddie Antar, Sam Antar, Mitchell Antar, Eddy Antar, Sam E. Antar, Solomon E. Antar, Isaac Kairey, and David Pardo "have formed and/or acquired an interest in, Crazy Eddie, … through a pattern of racketeering activity consisting of two or more predicate acts, which pattern consisted of the predicate acts described in paragraphs 27, 38, 39, 40, 49, 53, 56, 57, 58, 59, 60, and 62, herein."

Those paragraphs recite allegations describing the overall scheme of "the Antar family" (¶ 27), a false press release stating that Eddie Antar sold 1,500,000 Crazy Eddie shares on November 10, 1986 "solely in anticipation of significant changes" in the tax code (¶ 38), further donation of 500,000 shares by Eddie Antar (¶ 39), the inside information on which Eddie Antar traded (¶¶ 40, 49), favorable financial treatment of the individual defendants in the face of an imminent takeover (¶ 53), improper accounting practices, alteration and destruction of financial documents, inflation of inventory and per store sales figures, and "reep" and "nehkdi" transactions (¶¶ 56–59), issuance of Crazy Eddie's "published certified financial statement [which one or ones is not specified] … now known to have been materially false and misleading" (¶ 60), and failure to disclose the 1986 deterioration of the same store sales (¶ 62).

The complaint further alleges that the individual defendants "conspired and knowingly agreed to commit the foregoing acts" in violation of the mail fraud statute and "15 U.S.C. §§ 78(j), 78(ff), 78j(b), 78f(a), and Rule 10b–5." There is no such statute as 15 U.S.C. § 78(j) or § 78(ff). Plaintiffs presumably intended to plead § 78j and § 78ff, but the latter is simply a penalty provision. Moreover, § 78f(a) has no conceivable relevance to this case.

The complaint also alleges that Crazy Eddie used the wires and mails to perpetrate further frauds, but does not state that any of the individual defendants so used the wires or mails.

■ Since the predicate acts alleged in the complaint sound in fraud, they must comply with the heightened pleadings requirements of Rule 9(b). *See, e.g., Gregoris Motors v. Nissan Motor Corp. in USA,* 630 F.Supp. 902, 912 (E.D.N.Y.1986). The discussion of those requirements in the December opinion will not be repeated here. The policies underlying Rule 9(b) are especially important in RICO cases because of the harm to a person's reputation that allegations of "racketeering" may do and the *in terrorem* effect of RICO's treble damages provision. *Celpaco, Inc. v. MD Pa-*

*pierfabriken,* 686 F.Supp. 983, 989 (D.Conn.1988).

■ Most of the purported "predicate acts" alleged in the cited paragraphs of the complaint are not "racketeering activity" as defined in § 1961(1). Although they may be fraudulent, they do not involve mail or wire fraud, and most do not involve federal securities fraud. Such acts as destroying inventory count sheets are not in themselves securities fraud. The December opinion dismissed the insider trading claims for failure to plead contemporaneous trading by plaintiffs. The only remaining predicate acts that could possibly be offenses "involving fraud in the sale of securities," § 1961(1)(D), are those alleged in ¶¶ 27, 38, 60, and 62.

Although the December opinion held that plaintiffs' claims under the federal securities laws were adequately pleaded under Rule 9(b), the same is not true of the RICO claims. Those paragraphs in the complaint, such as ¶¶ 31–36, 41, and 44, detailing the particular misstatements and omissions alleged to have been made in corporate disclosures are not included among the "predicate acts."

■ A civil RICO claim alleging predicate acts of securities fraud must plead those acts with at least the particularity required to plead them under the relevant securities statutes. Those paragraphs of the complaint cited as "predicate acts" do not specify the documents or categories of documents in which the fraudulent statements were made or when they were made. The content of the misrepresentations is described only as failure to report the true reasons for Eddie Antar's sales, the "true inventory and cost of sales," and the 1986 deterioration in same store sales. *See, e.g., The Limited, Inc. v. McCrory Corp.,* 683 F.Supp. 387, 393 (S.D. N.Y.1988).

Many of the individual defendants were not officers for much of the Class Period. Since it is unclear from the allegations when the securities frauds took place, there are no facts from which an inference as to each defendant's participation and knowledge can be drawn. *See, e.g., Con-necticut Nat'l Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987).

Moreover, the allegation that the individual defendants "have formed and/or acquired an interest in" Crazy Eddie through the predicate acts is neither consistent with the allegations of insider sales nor relevant to claims under § 1962(c). That subsection requires plaintiffs to prove that defendants conducted or participated in the conduct of Crazy Eddie's affairs through a pattern of racketeering activity—quite a different thing from "forming" or "acquiring an interest in" an enterprise.

The individual defendants should not be put to the risk of treble damages without notice of the exact charges against them. Plaintiffs need not plead their evidence, but they should clarify which of the various acts of securities fraud alleged throughout the complaint they claim to be predicate acts under RICO and, to the extent possible, how each individual defendant participated in those acts.

Plaintiffs may be able to remedy the defects in their pleading. The court therefore dismisses their RICO claims with leave to amend.

### II. *The Section 12(2) Claims*

Peat Marwick moves to reargue the court's holding in the December opinion that the complaint properly alleged secondary liability for aiding and abetting a primary violation of § 12(2) of the Securities Act.

■ In light of the Supreme Court's opinion in *Pinter v. Dahl,* — U.S. —, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), and the Second Circuit's opinion in *Capri v. Murphy,* 856 F.2d 473 (2d Cir.1988), both discussed in the December opinion, the Second Circuit has reconsidered the scope of secondary liability under § 12(2). *Wilson v. Saintine Exploration & Drilling Corp.,* 872 F.2d 1124 (2nd Cir.1989).

The *Wilson* case held that "persons who do not meet the *Pinter* test for statutory sellers may not be held liable under Section 12 as aiders and abettors." 872 F.2d at 1126–1127.

As noted in the December opinion, Peat Marwick is not a "statutory seller." It is not alleged to have sold, offered to sell, or solicited the sale of Crazy Eddie securities. Under the *Wilson* holding, it thus is not liable for aiding and abetting a § 12(2) violation.

The December opinion dismissed plaintiffs' § 12(2) claims without prejudice for failure to plead that plaintiffs' shares were traceable to a faulty prospectus. *Bernstein, supra,* 702 F.Supp. at 972–73. The court now dismisses those claims against Peat Marwick with prejudice.

### III. *The Memorandum of Understanding*

Crazy Eddie moves to enforce a Memorandum of Understanding (the Understanding) purporting to settle the signatory plaintiffs' claims.

Crazy Eddie entered into the Understanding with plaintiffs Bernstein and Kaun on January 19, 1988. The Understanding provides that Crazy Eddie will do the following:

(1) Issue to the plaintiff class 2,750,000 shares of Crazy Eddie stock;

(2) Restructure the 6% convertible subordinated debentures due 2011 so as to improve the position of their holders;

(3) Assign to the plaintiff class all of Crazy Eddie's cross-claims and third-party claims;

(4) Share with the plaintiff class the results of Crazy Eddie's counsel's internal investigations;

(5) Retain Touche Ross & Co. as accounting experts;

(6) Waive the attorney-client and work-product privileges for all communications before November 6, 1987;

(7) Bring an action in Delaware Chancery Court to invalidate the "poison pill" adopted by Crazy Eddie's former management;

(8) Cooperate fully with plaintiffs' counsel; and

(9) Supply plaintiffs with a "war chest" of $100,000 to finance their legal costs.

In exchange, plaintiffs are to "attempt in good faith to agree upon and to execute an appropriate stipulation of settlement ... upon the terms set forth in [the Understanding]" and to obtain court approval of the settlement. The Understanding details several provisions of the proposed stipulation of settlement, including the scope of covenants not to sue. Consummation of the settlement is subject to approval by the Crazy Eddie Board of Directors and certification of a plaintiff class.

The Understanding "shall be null and void and of no force and effect should any of the conditions set forth in [the Understanding] not be met ... or should Crazy Eddie conclude that the proposed settlement will not achieve a proper resolution of all securities holders claims."

By letter dated December 16, 1988 counsel for plaintiff Kaun informed the court that "Plaintiffs' Executive Committee has, after due deliberation and discussions with counsel for Crazy Eddie, Inc., rescinded the Memorandum of Understanding." The court assumed from this communication that the parties had agreed to abandon the settlement.

By letter dated December 22, 1988 Crazy Eddie's counsel informed the court that it regarded the Understanding as binding and in force, and that it intended to contest plaintiffs' efforts to rescind the settlement. The court did not learn of Crazy Eddie's letter until after the December opinion had been issued.

Crazy Eddie now seeks a declaration that the Understanding is enforceable against all plaintiffs and remains in effect. Plaintiffs claim that the Understanding is too vague to be enforceable, that Crazy Eddie has not fulfilled its obligations, and that even if enforceable against the signers the Understanding is not enforceable against the plaintiff class.

Agreements to settle litigation are contracts governed by ordinary principles of contract law. *See, e.g., First Nat'l Bank of Cincinnati v. Pepper,* 454 F.2d 626, 632 (2d Cir.1972). The parties agree that the Understanding is governed by New York law. Plaintiffs do not claim that

their agreement was procured by fraud, duress, or other unlawful means. *See id.*

The Understanding is not a mere "agreement to agree" unenforceable for vagueness. It is an agreement in principle spelling out in detail the terms and conditions of an anticipated settlement. Although it requires the parties to "attempt in good faith to agree upon and to execute an appropriate stipulation of settlement," it explains what the terms of that settlement are to be. The Understanding is thus unlike agreements such as that in issue in *Joseph Martin, Jr., Delicatessen v. Schumacher,* 52 N.Y.2d 105, 436 N.Y.S.2d 247, 417 N.E.2d 541 (1981), in which a contract calling for renewal of a lease "at annual rentals to be agreed upon" was held void for vagueness because "[i]ts simple words leave no room for legal construction or resolution of ambiguity." *Id.,* 52 N.Y.2d at 111, 436 N.Y.S.2d at 250, 417 N.E.2d at 544–545.

Crazy Eddie is hampered in its ability to fulfill the conditions to settlement by the fact that the court has not yet certified a plaintiff class. Although Crazy Eddie has obtained shareholder authorization to issue 2,750,000 shares of common stock to the class, it cannot issue them until a class has been certified. For the same reason it cannot now assign its cross-claims and third-party claims to the class.

Crazy Eddie has, however, performed many of its obligations under the Understanding. It restructured the company's debt after four months' notice to plaintiffs' counsel. The exchange offer was accepted by 96% of the debentureholders. Although plaintiffs' counsel now argue that they were not consulted about the restructuring, as required by the Understanding, they were invited to participate and in any event did not represent any debentureholders, a fact not known to Crazy Eddie when it signed the Understanding.

Crazy Eddie attempted to remove the "poison pill" by vote of the shareholders. After that effort failed, it initiated an action in Delaware Chancery Court to have it removed. *Entertainment Marketing, Inc. v. NCNB Texas Nat'l Bank,* No. 10677

(Del.Ch.) (complaint filed Mar. 8, 1989). It has given plaintiffs access to its records, including legal files and memoranda pre-dating November 6, 1987, and to work performed by Touche Ross & Co. Plaintiffs concede that Crazy Eddie's counsel has given them substantial cooperation through the course of the litigation. They do not contend that they ever asked for any of their $100,000 "war chest."

Plaintiffs have identified no instance of Crazy Eddie's failure to fulfill its presently performable obligations. Since Crazy Eddie is not now in breach of the Understanding, plaintiffs are not entitled under either its terms or general principles of contract law unilaterally to rescind it.

Crazy Eddie further contends that the nonsignatory plaintiffs are bound by the Understanding because they have "accepted its benefits." But they have repeatedly expressed their dissatisfaction with it. Their acceptance of cooperation from Crazy Eddie's counsel does not constitute an agreement to be bound by the Understanding. Nor would a class of plaintiffs be bound by it unless they so agreed after certification.

The Understanding thus binds the signatory plaintiffs but not the others and not the plaintiff class if one is certified. There remain many conditions to be fulfilled, including certification of a class and execution of a stipulation of settlement agreeable to the class, before the full legal significance of the Understanding can be determined even as to the plaintiffs who are parties to it. But those plaintiffs are not now released from their obligation to act in good faith to obtain a settlement with Crazy Eddie on the terms set forth in the Understanding.

Crazy Eddie's motion is granted as to Bernstein and Kaun and denied as to all other plaintiffs.

### IV. *The Cross–Claims*

Peat Marwick and the individual defendants move to reargue the court's denial of their motion to dismiss Crazy Eddie's common-law cross-claims against them on the ground that the court was unaware at the

time of the December opinion that the Understanding was still in effect. They contend that Crazy Eddie, having assigned its claims against them to plaintiffs and agreed to cooperate with them, is not the real party in interest and lacks standing to sue the movants.

Crazy Eddie has not assigned its cross-claims to plaintiffs and cannot do so until a class of plaintiffs is certified. If some of the plaintiffs continue to object to the settlement outlined in the Understanding, Crazy Eddie may be entitled to "conclude that the proposed settlement will not achieve a proper resolution of all securities holders claims" and withdraw from that agreement. Indeed, the Understanding is fraught with such uncertainty that neither the contemplated assignment nor the settlement may ever come to pass.

 Under New York law a party conditionally assigning a claim retains the right to sue on it until all conditions to the assignment have been satisfied. *See, e.g., Miller v. Wells Fargo Int'l Corp.*, 540 F.2d 548, 558 (2d Cir.1976), and cases cited. Any other rule would discourage defendants from seeking settlements in complex litigation.

 The fact that Crazy Eddie may have characterized the Understanding as unconditional and irrevocable in proceedings before other courts, as the movants claim, is irrelevant to its standing in this action.

The motion to dismiss the cross-claims is denied.

### V. *Conclusion*

The court's December 30, 1988 Memorandum and Order is vacated insofar as it is inconsistent with this Memorandum and Order. Plaintiffs' claims under 18 U.S.C. § 1962(c) and (d) are dismissed without prejudice. Crazy Eddie's cross-claims under those sections are dismissed with prejudice. Plaintiffs' claims under 15 U.S.C. § 77*l*(2) against Peat Marwick are dismissed with prejudice. The Understanding with Crazy Eddie is declared enforceable as to plaintiffs Bernstein and Kaun and unenforceable as to the other plaintiffs. Peat

Marwick's and the individual defendants' motion to dismiss Crazy Eddie's common-law cross-claims is denied.

So ordered.