Tamra F. GOULD, an individual, the Gould Trading Company, an Ohio corporation, and Steven Berger IRA, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Paul M. HARRIS, Howard C. Fletcher, III, Jon D. Van Deuren, Donald J. Bohana, Marilyn M. Cohen, Saul Socoloske, John P. Sullivan, and Oppenheimer & Co., Inc., Defendants.

No. CV–95–2584 KMW (VAPx).

United States District Court, C.D. California.

June 12, 1996.

Lionel Z. Glancy, Peter A. Binkow, Law Offices of Lionel Glancy, Santa Monica, CA, John F. Davis, Laguna Hills, CA, for Tamara F. Gould.

Bert H. Deixler, Hayes F. Michel, McCambridge, Deixler, Marmaro & Goldberg, Los Angeles, CA, for Paul M. Harris, Howard C. Fletcher, Jon D. Van Deuren, Marilyn M. Cohen, Saul Socoloske and John P. Sullivan.

Karin L. Keutzer, McKenna & Cuneo, Los Angeles, CA, Robert M. Abrahams, Glenn E. Butash, Jennifer Schantz, Schulte Roth & Zabel, New York City, for Oppenheimer & Co., Inc.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AND FIFTH CAUSES OF ACTION WITHOUT PREJUDICE; ORDER DENYING DEFENDANTS' REQUEST FOR AN UNDERTAKING

WARDLAW, District Judge.

The Court has considered defendants' Motion to Dismiss the Second Consolidated Amended Complaint filed on March 20, 1996, and has reviewed all the material filed by the plaintiffs and defendants in connection with the Motion. Based upon all briefs, declarations, and other evidence submitted by the parties, the oral argument of counsel, as well as all files and records in this case, the Court hereby grants the motion to dismiss plaintiffs' second and fifth causes of action with 20 days leave to amend. The Court denies defendants' request for an undertaking.

## I. BACKGROUND

This is a securities fraud class action filed on behalf of the purchasers of securities of Guardian Bancorp ("Guardian") between October 6, 1993 and August 1, 1994 ("the Class Period"). Plaintiffs Tamra Gould ("Gould"), Gould Trading Company ("Gould Trading"), an Ohio corporation, and Steven Berger IRA ("Berger") (collectively, "the Named Plaintiffs") sue on behalf of themselves and all other similarly situated individuals who purchased securities from Guardian Bancorp during the Class Period.

Guardian, headquartered in Los Angeles, California, was, at all relevant times, a bank holding company conducting operations through its sole subsidiary, Guardian Bank, a California state-chartered bank. Defendants Paul M. Harris, Howard D. Fletcher III, Jon D. Van Deuren, Donald J. Bohana, Marilyn M. Cohen, Saul Socoloske and John P. Sullivan ("the individual defendants") are former officers and/or directors of Guardian. Defendant Oppenheimer & Co., Inc. ("Oppenheimer") was allegedly the managing underwriter of Guardian's January 1994 secondary public stock offering ("the offering").[1]

After sustaining substantial growth in assets and net earnings from 1983 to 1990, Guardian's fortunes began to decline along with the Southern California economy in the early 1990's. Second Consolidated Amended Complaint ("SAC") ¶ 32. By the time of the offering in January 1994, Guardian had already suffered significant financial trouble. Federal bank regulators had assessed civil penalties against Guardian for various irregularities, and Guardian was operating under a detailed Memorandum of Understanding and Written Agreement that had been imposed on it by the regulators. SAC ¶ 52.

1. Oppenheimer asserts that, in fact, it was only the dealer/manager of the offering and did not act as underwriter. Memorandum at 3.

■ In connection with the offering, Guardian filed a detailed Registration Statement and Prospectus ("the Prospectus") in late 1993. The Prospectus contained a warning in capital letters: "POTENTIAL PURCHASERS OF RIGHTS OR COMMON STOCK SHOULD CAREFULLY CONSIDER THE MATTERS SET FORTH UNDER THE HEADING 'RISK FACTORS.'" Butash Decl., Exhs. B and C.[2] After another such general warning, the Prospectus continued with a seven page discussion of the risks facing Guardian under fourteen different headings. These headings included: Risk of Continued Losses; Dependence on Real Estate; Asset Quality; Impact on Recessionary Environment in the Company's Market Area; Volatility of Funding Sources; Concentration of Customers; Existing and Potential Regulatory Enforcement Actions; Risk of Default on Subordinated Debentures; Capital Requirements; Inability to Pay or Receive Dividends; Possible Federal Income Tax Consequences to the Company; Market Considerations; Dilution; Regulatory Change; and Competition. *Id.*

The Prospectus informed potential investors that "[t]here can be no assurance that the Company will resume profitable operations." The Prospectus further reported the existence of "substantial loan quality deterioration" in preceding months, and quantified the levels of its nonperforming assets and appropriate loss reserves; it warned that general economic conditions could continue to adversely affect Guardian's loan performances and collateral; it also disclosed its agreement with the federal regulators, and stated that there was no assurance that Guardian's actions would be sufficient to induce the regulators to terminate the agreements or that further enforcement actions would not be commenced, including imposition of a conservator or receiver. *Id.*

The Named Plaintiffs allegedly purchased Guardian securities during the Class Period. SAC ¶¶ 6, 7. On January 20, 1995, the FDIC took over Guardian, and plaintiffs' investments were rendered worthless. Opposition at 5.

On April 19, 1995, plaintiffs commenced this action by filing a Complaint for Violation of Federal Securities Laws with this Court. Certain defendants moved to dismiss the Complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Plaintiffs filed a statement of non-opposition to the motion and, by order dated September 6, 1995, the Complaint was dismissed with leave to amend. On September 25, 1995, plaintiffs filed a Consolidated Amended Complaint. Again, the defendants moved to dismiss pursuant to Rules 12(b)(6) and 9(b). By order dated January 22, 1996, the Court granted in part and denied in part the defendants' motions to dismiss.

On February 7, 1996, plaintiffs filed a Second Consolidated Amended Complaint ("SAC") alleging causes of action against defendants as follows:

1. Violations of Section 10–b of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10(b)–5 promulgated thereunder (against the Individual Defendants only);

2. Violations of Section 11 of the Securities Act of 1933 ("Securities Act") (against all defendants);

3. Violations of Section 15 of the Securities Act (against all defendants except Oppenheimer);

4. Violations of Section 20(a) of the Exchange Act (against the Individual Defendants) and;

5. Violations of Section 12(2) of the Securities Act (against Oppenheimer).

According to the SAC, defendants engaged in a scheme to defraud investors through the dissemination of false and misleading statements of material fact contained in the registration statement, prospectus and other public statements issued in connection with the offering. Plaintiffs contend that although de-

---

**2.** The Court may properly consider the Registration Statement and Prospectus on a motion to dismiss, and such consideration does not convert the motion into one for summary judgment. *Fecht v. The Price Co.,* 70 F.3d 1078, 1080, n. 1 (9th Cir.1995); *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994), *cert. denied,* —— U.S. ——, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994). The Court has reviewed the pertinent portions of the Registration Statement and Prospectus.

fendants warned investors of certain future risks, they failed to disclose certain known and preexisting problems at Guardian. The SAC alleges, *inter alia,* that the defendants responsible for the Prospectus: (1) fundamentally misrepresented the then current state of Guardian's loan portfolio, including the substantial number of problems relating to directors' loans and director referred loans (SAC ¶¶ 33–64); (2) failed to reveal the intended use of a considerable portion of the offering proceeds, and concealed the Board of Director's then current intentions to conduct of "bulk sale" of Guardian's non-performing assets (SAC ¶¶ 65–70); (3) misrepresented the actual make-up and structure of Guardian's management (SAC ¶¶ 71–78); and (4) failed to disclose that Guardian was not in compliance with applicable regulatory capital requirements, or that Guardian's deposit profile presented a grave risk to its continued existence (SAC ¶¶ 79–84). Plaintiffs seek, *inter alia,* compensatory damages, injunctive relief, and restitution and rescission. SAC at 54–55. The SAC includes an express tender to Oppenheimer of the Guardian securities which plaintiffs purchased and currently hold. SAC ¶ 111.

On March 20, 1996, Oppenheimer filed a motion to dismiss the SAC pursuant to Fed. R.Civ.P. 12(b)(6). On the same date, six of the seven individual defendants joined in Oppenheimer's motion.[3] This motion is now before the Court.

### DISCUSSION

#### A. Legal Standard For a Motion to Dismiss for Failure to State a Claim.

■ A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). Therefore, a court must not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Moore v. City of Costa Mesa,* 886 F.2d 260, 262 (9th Cir.1989) (quoting *Conley v. Gibson* ), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990); *see Haddock v. Board of Dental Examiners of California,* 777 F.2d 462, 464 (9th Cir.1985) (complaint should not be dismissed if it states a claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory). In other words, a Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988).

■ A court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987); *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986); *see also Russell v. Landrieu,* 621 F.2d 1037, 1039 (9th Cir.1980) (finding that the complaint must be read in the light most favorable to the plaintiff). However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Min. Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

■ Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1482 (9th Cir.1991). A court may, however, consider exhibits submitted with the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1989); *Mack v. South Bay Beer*

---

**3.** At oral argument, plaintiffs' counsel stated that individual defendant Donald J. Bohana has not

yet been served in this action.

*Distributors, Inc.,* 798 F.2d 1279, 1282 (9th Cir.1986).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981).

## B. Plaintiffs have failed to Adequately Allege That They Purchased Guardian Securities in the Initial Rights Offering.

Defendants first attack the SAC on the grounds that it fails to adequately allege that plaintiffs purchased Guardian securities in the initial rights offering.

Plaintiffs' second and fifth causes of action arise under Sections 11 and 12(2) of the Securities Act. Section 11 provides that any signer, officer of the issuer, or underwriter may be held liable for a registration statement that contains an untrue statement of a material fact or omits a material fact. 15 U.S.C. § 77k(a). Section 12(2) grants purchasers an express cause of action for rescission, or for damages if they no longer own the securities, against those who sell securities "by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading...." 15 U.S.C. § 77*l* (2).

■ In *Gustafson v. Alloyd Co.,* — U.S. ——, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995), the United States Supreme Court held that Section 12(2) applies only to distributions of securities by an issuer or controlling shareholder in public offerings. In reaching this result, the Court concluded that under section 10 of the Securities Act a prospectus is "confined to documents related to public offerings by an issuer or its controlling shareholders." *Id.* at ——, 115 S.Ct. at 1067. The Court construed the term "prospectus" to have the same meaning under both sections 10 and 12. *Id.* Both the structure of the Securities Act which "was primarily concerned with the regulation of new offerings," and the intent of Congress supported the Court's holding. *Id.* at ——, 115 S.Ct. at 1068, *quoting United States v. Naftalin,* 441 U.S. 768, 777–78, 99 S.Ct. 2077, 2083–84, 60 L.Ed.2d 624 (1979). The Court reasoned:

> It is understandable that Congress would provide buyers with a right to rescind, without proof of fraud or reliance, as to misstatements contained in a document prepared with care, following well established procedures relating to investigations with due diligence and in the context of a public offering by an issuer or its controlling shareholders. It is not plausible to infer that Congress created this extensive liability for every casual communication between buyer and seller in the secondary market.

*Gustafson,* — U.S. at ——, 115 S.Ct. at 1071.

■ The *Gustafson* reasoning is equally applicable to claims arising under section 11. *See Stack v. Lobo,* 903 F.Supp. 1361, 1375 (N.D.Cal.1995) ("*Stack II* "). The two sections share the same legislative history. The House Report quoted by the Supreme Court in *Gustafson* suggests that liability under sections 11 and 12 arises only for transactions requiring a registration statement. *Gustafson,* — U.S. at ——, 115 S.Ct. at 1072; *Stack II,* 903 F.Supp. at 1375. To prevail under section 11, the purchaser need only demonstrate (1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment. *Kaplan v. Rose,* 49 F.3d 1363, 1371 (9th Cir.1994). Thus, like section 12, section 11 imposes liability without proof of fraud or reliance. 15 U.S.C. § 77k. As with section 12(2), it is "not plausible to infer that Congress created this extensive liability for every casual communication between buyer and seller in the secondary market." *Gustafson,* — U.S. at ——, 115 S.Ct. at 1071.

■ Plaintiffs do not dispute that they must establish that they purchased Guardian securities during the initial rights offering.

Rather, Plaintiffs maintain that their allegations are sufficient. Opposition at 5.

Paragraphs 6 and 7 of the SAC allege:

6. Plaintiff TAMRA F. GOULD purchased Guardian securities during the Class period. Plaintiff GOULD TRADING COMPANY purchased Guardian securities during the Class Period. The Gould Plaintiffs purchased Guardian securities on the offering in a distribution pursuant to a registration statement underwritten by defendant Oppenheimer & Co., Inc. ("OPPENHEIMER"). Certain of the Gould Plaintiffs' securities are traceable to the offering.

7. Plaintiff STEVEN BERGER IRA purchased Guardian securities during the Class Period.

SAC ¶¶ 6, 7.

Although Plaintiffs' allegations are sufficient with respect to Gould and Gould Trading, they are plainly inadequate with respect to Berger, and with respect to the class of purchasers which the Named Plaintiffs purport to represent. The SAC fails to set forth any allegations that either Berger or the unnamed class members purchased Gould securities in the January 1994 public offering, and therefore, under *Gustafson*, plaintiffs' second and fifth causes of action must be dismissed.

Plaintiffs' attempts to avoid this result fail. Plaintiffs' request that the Court "should be aware of the prior pleadings in this matter . . .," Opposition at 5, is rejected because plaintiffs' prior pleadings are irrelevant to a review of the sufficiency of the SAC's allegations. Plaintiffs allege that certain of the "Gould Plaintiffs" securities are traceable to the offering, in an attempt to clarify that certain other purchases of securities "were *not* traceable to the offering, as they were bought before the offering." This only further obscures the timing of the purchase of securities and whether a claim is adequately alleged. Opposition at 6. And, as Oppen-

heimer correctly points out, neither section 11 nor section 12 extends to securities purchases that are merely "traceable" to the offering. Under *Gustafson*, sections 11 and 12(2) apply only to purchases made in the initial offering and not those purchased in the secondary market. *Gustafson*, —— U.S. at ——, 115 S.Ct. at 1071; *In re Valence Technology Securities Litigation*, 1996 WL 37788 (N.D.Cal.) ("The language of *Gustafson* makes irrelevant whether the transaction is 'traceable' to a public offering").[4]

Because plaintiffs fail to adequately allege that they purchased their Guardian securities in the offering, rather than in the secondary market, their second and fifth causes of action must be dismissed. The Court will nonetheless allow the plaintiffs to cure the deficiencies of the SAC. Accordingly, the second and fifth claims are dismissed with leave to amend.

**C. Plaintiffs' Tender of Their Guardian Shares in Their Complaint Within the Limitations Period is Sufficient to Withstand a Motion to Dismiss for Lack of "Prompt Tender."**

Defendants also seek dismissal of plaintiffs' Section 12(2) claim because plaintiffs failed to tender their shares promptly upon learning of defendants' alleged fraud.

As previously discussed, section 12(2) grants purchasers an express cause of action for rescission, or for damages if they no longer own the securities. Specifically, the statute provides that purchasers "may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." 15 U.S.C. § 77l. Thus, a plaintiff may recover under Section 12(2) "only after alleging that he properly tendered his securities to his seller or that he sold his securities

---

**4.** Although not cited by plaintiffs, the Northern District of California in *Stack II*, stated that claims may be brought under sections 11 and 12(2) not only by those who purchased securities in a public offering but also by those whose securities are traceable to the public offering. However, the case relied upon by the court for this proposition was decided before *Gustafson*. In this Court's opinion, *Gustafson* eliminated all claims other than those based upon purchases made *in* the initial offering.

to his damage." *McFarland v. Memorex Corp.*, 493 F.Supp. 631, 648 (N.D.Cal.1980) reconsidered on other grounds, 581 F.Supp. 878 (1984). Section 12(2) does not specify the time within which such tender must be made. 15 U.S.C. § 77*l*. Nonetheless, a few courts have held that the plaintiffs' failure to tender in a prompt manner is fatal to a claim under this provision. *See Westinghouse Electric v. '21' International Holdings, Inc.*, 821 F.Supp. 212 (S.D.N.Y.1993) (failure to demand rescission for three months held fatal to Section 12(2) claim); *see also Schaeffer v. Overland Express Family of Funds*, Slip Op. Case No. 95–0314–B (POR) (S.D.Ca. 1995) (delay of almost one year).

■ Defendants do not claim that plaintiffs' Section 12(2) claim should be dismissed as barred by the applicable statute of limitations. Rather, relying heavily on *Westinghouse*, defendants assert that plaintiffs must allege that they tendered their shares promptly upon learning of a purported ground for rescission. Because plaintiffs have not, and cannot establish "prompt tender", defendants seek dismissal with prejudice of plaintiffs' fifth claim.

This Court rejects that argument because it believes it would be improper to impose a stricter time requirement on plaintiffs than that expressly provided in the Securities Act.[5] Section 13 of the Securities Act expressly provides that the statute of limitations for an action under section 12(2) is one year from the plaintiff's discovery of the wrong or a maximum of three years from the plaintiffs' purchase. 15 U.S.C. Section 77m. Neither Section 12(2) nor any other relevant statutory provision requires that plaintiffs tender their securities or otherwise institute proceedings within a shorter time. In *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), the United States Su-

preme Court addressed the concern that the statutory period could unfairly place sophisticated investors in a no-lose position:

> The statute ... permits such maneuvers [whereby securities purchasers may wait until the end of the one-year limitations period to decide to sue]. Section 12(1)'s deterrent effect is achieved, to a great extent, by a provision allowing suits for a full year following sale. [citation omitted] Although this provision may appear to offend a sense of fair play, allowing the investor to sue, regardless of his knowledge of the violation when he purchased the securities, it furthers the interests of the Securities Act: the seller then has strong incentive to comply with the registration disclosure provision.

*Id.* at 637, n. 13, 108 S.Ct. at 2073, n. 13. Although *Pinter* dealt with section 12(1), the reasoning of the above quoted provision applies with equal force to section 12(2). *See e.g. Wilson v. Saintine Exploration & Drilling Corp.*, 872 F.2d 1124, 1126 (2d Cir.1989).[6]

Numerous courts have held that a tender for rescission made in the complaint at the outset of a section 12(2) lawsuit satisfies the statutory requirement. In *Wigand v. Flo–Tek, Inc.*, 609 F.2d 1028 (2d Cir.1979), the Second Circuit stated:

> [a]s a final condition to liability under § 12(2), the Act requires 'tender' of the securities, if they are still held by the plaintiff. 15 U.S.C. 77*l*. The language of the section gives no hint as to the time place or manner of such tender ... [A]n offer to tender contained in the complaint will suffice.

*Id.* at 1034–35. *See also Jubran v. Musikahn Corp.*, 673 F.Supp. 108, 114 (E.D.N.Y. 1987) (since "neither the statute nor the cases specify the time for tender, ... a tender prior to or at trial satisfies the purpose

---

5. During oral argument, defense counsel argued that under section 12(2) purchasers are required to tender their shares within one year of discovering the grounds for rescission. In fact, the statute contains no such limitation. In order to state a claim under section 12(2), purchasers need only seek rescission and tender their shares within the applicable statute of limitations. Here, plaintiffs' section 12(2) claim, including their tender of Guardian shares, relates back to

the filing of the original complaint and is therefore timely.

6. Defendants cite *Randall v. Loftsgaarden*, 478 U.S. 647, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986) in support of their "prompt tender" arguments. Significantly, *Pinter* was decided two years after *Randall*. Moreover, the *dicta* quoted in Defendants' brief is just that—and is not binding on this or any other court.

for tender."); *Anisfeld v. Cantor Fitzgerald & Co.*, 631 F.Supp. 1461 (S.D.N.Y.1986) (an explicit tender in complaint is sufficient).

■ Finally, it is well settled that courts may not shorten express statutory periods by engrafting other time requirements or restrictions onto a statutory claim. *See e.g. Holmberg v. Armbrecht*, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946) ("If Congress explicitly puts a limit upon the time for enforcing a right which it has created, there is an end to the matter.")

For these reasons, the Court declines to read a "prompt tender" requirement into Section 12(2), and defendants' motion to dismiss plaintiffs' fifth cause of action on the grounds that plaintiffs failed to satisfy such requirement must be denied.

## D. Defendants' Request for an Undertaking is Denied.

■ Defendants argue at length that plaintiffs case is utterly meritless in light of the extensive warnings contained in the Prospectus and that an undertaking should therefore be required.[7]

Section 11(e) of the Securities Act provides, in relevant part, as follows:

> In any suit under this or any other section of this subchapter the court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attorney's fees … if the court believes the suit or the defense to have been without merit.

15 U.S.C. § 77k(e). The standard for determining the propriety of an undertaking is whether the defendants have shown that plaintiffs have commenced their lawsuit in bad faith or that their claims border on the frivolous. *Weil v. Investment/Indicators, Research & Management*, 647 F.2d 18, 22 (9th Cir.1981). An order requiring an undertaking need not be based on a formal, factual finding that the claim or defense is obviously without merit or is asserted in bad faith; such a finding is premature and inappropriate at the time when the decision whether to require an undertaking must be rendered.

*Id.* It is only required that an eventual finding of bad faith or obvious lack of merit appears likely to the district court in view of the evidence before it. *Id.*

■ The primary purpose of Section 11(e) "is to deter bringing of meritless actions solely for the purposes of procuring a favorable settlement." *Phillips v. Kidder, Peabody & Co.*, 686 F.Supp. 413, 415 (S.D.N.Y.1988). Requests for an undertaking are generally disfavored. *Id.; Straus v. Holiday Inns, Inc.*, 460 F.Supp. 729, 732 (S.D.N.Y.1978). Even absent an undertaking, under Section 11(e) (or Fed.R.Civ.P. 11), the court may assess litigation costs against plaintiffs after a judgment in favor of defendants. 15 U.S.C. § 77k(e); *Phillips*, 686 F.Supp. at 416.

■ In the instant case, plaintiffs have alleged omissions of then existing material facts that render the specific statements in the Prospectus misleading. As set forth in the SAC, Guardian's offering warned that its success and viability would depend upon future events, specifically the future of Southern California's real estate market and overall economy. SAC ¶ 33. However, according to plaintiffs, the real reasons for Guardian's eventual collapse were pre-existing, materially adverse facts which defendants knew, and/or were reckless in not knowing, during the Class Period.

As previously discussed, the SAC alleges, *inter alia*, that: (1) actual known levels of Guardian's nonperforming assets were far higher, and loss reserves therefore far lower, than disclosed at the time of the Prospectus; (2) although the Prospectus stated important loans to directors and director-referred persons were only of average risk, they were in fact known to be highly troubled; (3) contrary to information in the Prospectus about the management restructuring supposedly taken at the behest of the federal regulators, various senior managers were still in *de facto* control of operations; and (4) rather than "managing loans in an orderly manner," Guardian's Board was secretly planning a "bulk sale" of nonperforming assets that

---

7.  These arguments are similar to defendants' earlier arguments, rejected by Judge Tashima, that the "bespeaks caution" doctrine should bar plaintiffs' claims.

would cause substantial and undisclosed accounting devaluations in Guardian's assets.

According to defendants, the "relative insignificance" of plaintiff's allegations, when compared to the warnings contained in the prospectus, supports the conclusion that it is unlikely plaintiffs will prevail at trial. Memorandum at 23. The Court disagrees. The misrepresentations and omissions alleged in the SAC, if established, could render the more general warnings of contingent risk contained in the prospectus ineffective to shield defendants from liability. Whether such misrepresentations and omissions would have been considered important to a reasonable investor is a fact-specific issue. *In re Apple Computer Securities Litigation,* 886 F.2d 1109, 1113 (9th Cir.1989). At this stage of the litigation, the Court cannot conclude that an eventual finding of "obvious lack of merit" appears likely.

Accordingly, defendants' request for an undertaking under section 11(e) is denied.

## II. CONCLUSION

For the reasons discussed above, the Court **GRANTS** defendants' motion to dismiss plaintiffs' second and fifth causes of action with leave to amend. The Court **DENIES** defendants' request for an undertaking. Plaintiffs shall file their amended complaint on or before June 27, 1996.

**IT IS SO ORDERED.**